**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
lsironski@bursor.com

SINDERBRAND LAW GROUP, P.C.
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Rd., Ste 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
Email: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTY CLIFFT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOLIE SKIN CO. INC.,<br><br>Defendant. | Case No. 2:26-cv-2942<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Christy Clifft ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Jolie Skin Co. Inc. ("Defendant" or "Jolie"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action lawsuit on behalf of purchasers of the Jolie Filtered Showerhead (the "Product").

2. Defendant makes various representations on its website, jolieskinco.com, claiming a multitude of benefits the Product purportedly delivers. Defendant represents that "HAIR GROWTH STARTS WITH CLEAN WATER" (*see* Figure 1) and features a dedicated page titled "How to Increase Hair Growth with a Jolie Filtered Showerhead" (the "hair-growth" page) (*see* Figure 2). Defendant also claims on its Amazon product pages and Defendant's other marketing channels that "Filtering your shower water with Jolie is clinically-proven to reduce hair shedding" (because "81% of users experienced reduced hair shedding") by removing chlorine and heavy metals that cause damage "contributing to hair loss" and this results in "MORE HAIR ON YOUR HEAD, LESS IN THE DRAIN" (*see* Figure 3) ("Hair Restoration Representations"). However, these Hair Restoration Representations are false and misleading because scientific evidence shows chlorine and hard water cause hair shaft damage, breakage, and apparent shedding that mimics loss; filtration does not promote new follicular hair growth, increase actual growth rates, or prevent true telogen effluvium or androgenetic hair loss.[1]

---

[1] Srinivasan G, Ranganathan S, Sivakumar N. Effects of hard water on hair. Int J Trichology. 2013;5(3):137-139. doi:10.4103/0974-7753.125609. PMCID: PMC3927171. PMID: 24574692. Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3927171/. Trüeb RM. Oxidative stress in ageing of hair. Int J Trichology. 2009;1(1):6-14. doi:10.4103/0974-7753.51923. PMCID: PMC2929555. PMID: 20805969. Available at:

3. Unfortunately for Plaintiff and other similarly situated consumers, scientific literature demonstrates that, while chlorine and hard water can damage hair causing breakage and thinning that may mimic hair loss, removing these contaminants through filtration does not lead to increased follicular hair growth, reduced true shedding rates, or "more hair on your head" as warranted by Defendant's claims[2] (*see* Figure 3). As such, Defendant's Hair Restoration Representations are factually false and misleading. Yet, Defendant charges consumers a price premium for its Product based on these false and misleading Hair Restoration Representations.

4. Accordingly, Plaintiff brings claims individually and on behalf of a Nationwide Class and California Subclass of all others similarly situated against Defendant for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of Express Warranty; and (5) Unjust Enrichment.

## PARTIES

5. Plaintiff Christy Clifft is a citizen of California residing in Encino, California. Plaintiff first came across Defendant's Product advertisements on Amazon and directly on jolieskinco.com (including the hair-growth page), where she saw and relied on the Product's Hair Restoration Representations, specifically

---

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2929555/. Pires-Oliveira R, Joekes I. Hair color damages caused by exposure to chlorinated water in the presence of ultraviolet radiation. Presented at the 26th IFSCC Congress; 2010. Available at: https://www.researchgate.net/publication/236109930_Hair_color_damages_caused_by_exposure_to_chlorinated_water_in_the_presence_of_ultraviolet_radiation (full PDF free; frequently cited for chlorine + UV effects on hair color and protein damage in pools/sunlight).

[2] Trüeb RM. The impact of oxidative stress on hair. Int J Cosmet Sci. 2015; 37(Suppl 2):25-30. doi:10.1111/ics.12286. https://pubmed.ncbi.nlm.nih.gov/26574302/.

"HAIR GROWTH STARTS WITH CLEAN WATER" (Figure 1), "How to Increase Hair Growth with a Jolie Filtered Showerhead" (Figure 2), and related claims warranting promoted hair growth and reduced loss. Plaintiff also reviewed and relied on Defendant's Hair Restoration Representations on Ulta's online Product page, including that the Product is "[c]linically proven to reduce hair shedding in 81% of people."

6. Plaintiff purchased the Jolie Filtered Showerhead on August 18, 2025, from Ulta.com for $185.48 (including tax). In making the purchase, Plaintiff reviewed and relied on Defendant's warranties and representations about the Product's hair growth and hair loss prevention capabilities made on Defendant's various marketing channels, including Amazon, Ulta, and Defendant's website. At the time of purchase on Ulta's online store, Plaintiff also reviewed and relied upon Defendant's claims that the Product was "clinically proven" to "reduce hair shedding." Plaintiff reasonably relied on Defendant's Hair Restoration Representations and believed that the Product would increase hair growth and reduce hair loss as a result of the Product's filtering properties, relying on headlines and page titles like "HAIR GROWTH STARTS WITH CLEAN WATER" (Figure 1) and "How to Increase Hair Growth with a Jolie Filtered Showerhead" (Figure 2), as well as warranties of "more hair on your head" (Figure 3) from filtered water benefits.

7. Plaintiff installed and used the Product daily for approximately 60 days, following Defendant's instructions for installation and use. Despite consistent daily use, Plaintiff observed no noticeable change in her hair shedding, hair growth, dryness, breakage, thinning, or overall hair health and volume compared to her pre-use baseline condition. Plaintiff saw no new hair growth, no reduction in hair shedding or loss, and did not experience the fuller, healthier appearance or other improvements promised by Defendant's Hair Restoration Representations. Had Defendant not warranted and represented that the Product would promote hair

growth and reduce hair loss by filtering out chlorine, Plaintiff would not have purchased the Product or would have paid substantially less for it. In making her purchase, Plaintiff paid a substantial price premium due to the false and misleading Hair Restoration Representations. However, Plaintiff did not receive the benefit of her bargain because the Product is, in fact, not capable of providing the promised Hair Restoration Representations.

8. Plaintiff suffered economic injury as a direct result of Defendant's material misrepresentations and warranties in the form of a price premium paid for the Product because she would not have purchased the Product at all, or would have paid substantially less, but for the false and misleading Hair Restoration Representations. Plaintiff remains interested in using or repurchasing a filtered showerhead with similar purported benefits but is unable to determine if Defendant's Hair Restoration Representations are accurate. So long as Defendant markets the Product as having qualities it does not have, Plaintiff will be unable to make informed purchasing decisions, will face the risk of being repeatedly misled, and will be unable to make a fully informed evaluation of different prices between Defendant's Product and competitors' products absent injunctive relief requiring Defendant to cease such practices and market the Product accurately.

9. Defendant Jolie Skin Co. is a New York company headquartered in Accord, New York. Defendant advertises, markets, manufactures, distributes, and sells its Product throughout California and the United States. At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold the Product to consumers throughout the United States and California, including in this District.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 Class Members, and the aggregate

amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has general and personal jurisdiction over Defendant because Defendant purposefully avails itself of the benefits of doing business in this District by selling the Product in this District. As such, a substantial portion of the events giving rise to this action occurred in this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant sold its Product to consumers in this District and Plaintiff was harmed by Defendant's actions in this District.

## FACTUAL ALLEGATIONS

### A. The Hair Care Industry

13. The hair care industry is a rapidly expanding sector focused on products and devices marketed to improve hair health, reduce shedding, and promote growth. This market capitalizes on consumer concerns about hair loss, thinning, and damage, often amplified by social media influencers on platforms like TikTok and Amazon. Brands emphasize "clinically proven" results, transparency, and innovative solutions, leading consumers to pay significant premiums for products they believe will deliver measurable benefits like increased volume and reduced drain clogging.

14. The global hair care market was valued at approximately $94-114 billion in 2024 and is projected to reach $129-213 billion by 2032, growing at a compound annual growth rate of 6-9%. In the U.S., the hair and scalp care segment alone is expected to exceed $20 billion in 2025, driven by demand for anti-shedding and growth-enhancing innovations. The shower filter subcategory, intersecting with hair care, is a niche worth $0.6-1.3 billion globally in 2025, expanding at 7-9% annually as consumers seek wellness gadgets for "cleaner" water benefits.[3]

---

[3] Global Market Insights Global Forecast (2025-2034). https://www.gminsights.com/industry-analysis/hair-care-market.

15. Brands like Defendant's exploit these trends by blending filtration technology with hair restoration promises, but deceptive claims—such as overstating breakage reduction as true "hair growth"—proliferate, misleading consumers in a market rife with unsubstantiated advertising. This ever-growing industry rewards hype over science, enabling Defendant to charge premiums for outcomes its Product cannot deliver.

**B. Defendant Represents and Warrants That Its Product Increases Hair Growth and Prevents Hair Shedding**

16. On Defendant's distribution channels, such as its Ulta.com page, Amazon Product page, and website, www.jolieskinco.com, Defendant makes various Hair Restoration Representations to induce reasonable consumers to purchase its Product, including that "hair growth starts with clean water."




***Figure 1***

17. Through its marketing, Defendant tells consumers that once they eliminate "chlorine and other contaminants" from their water with the Product, they will experience an increase in hair growth and a reduction in hair shedding. However, this is misleading because scientific evidence shows chlorine adversely affects the hair shaft (dryness, cuticle erosion, breakage mimicking shedding), but does not diminish follicular growth rate or cause permanent hair loss.[4] Claims like "increase hair growth" (Figure 2) overstate benefits and mislead reasonable consumers.




***Figure 2***

18. Defendant markets its Product by making various hair growth representations where it not only makes claims of new hair growth but conflates increased hair growth with reduced hair loss. Yet, just like hair growth does not result from eliminating chlorine, hair loss is not a consequence of chlorine exposure and eliminating chlorine will not reduce hair loss. Defendant uses these claims to charge consumers a price premium for a Product that claims to provide Hair Restoration Representations but that cannot deliver them. These representations are not vague slogans or subjective opinions, but specific, measurable claims presented as scientifically validated outcomes, reinforced by Defendant's repeated use of quantified results, causal explanations, and assertions of clinical proof.

---

[4] Draelos ZD. *The biology of hair care*, Dermatol Clin. 2008; 26(4):427-438. doi:10.1016/j.det.2008.06.002. Available at: https://pubmed.ncbi.nlm.nih.gov/18755364/




***Figure 3***

19. Defendant saturates its website with its Hair Restoration Representations, where it repeats to consumers that the Product will deliver "more hair on [consumers'] head[s]." The Hair Restoration Representations are a crucial selling point for Defendant's Product or the claims would not be made on every page on Defendant's website. Even so, the Product cannot deliver these promised benefits.

[INTENTIONALLY BLANK]




***Figure 4***




***Figure 5***




***Figure 6***

20. For instance, Defendant represents that:

a. "Filtering your shower water with Jolie is clinically-proven to reduce hair shedding;"

b. "81% of users experienced reduced hair shedding;"

c. "81% of people notice less hair shedding;" and

d. "Jolie filters chlorine and heavy metals and is clinically proven to reduce dryness, irritation, and hair shedding."[5]

21. To further dress up its Hair Restoration Representations, Defendant provides a report on hair shedding where it states that "[w]ater contamination is a cause of hair shedding—it causes abrasive texture, mineral deposits, and decreased thickness in hair shafts."[6] The report lists out results for participants who "experienced a reduction in hair shedding."[7] Defendant seemingly purports to hold this report out as a clinical trial to support its "clinically proven" claims (which it

[5] The Filtered Showerhead, Jolie, https://tinyurl.com/JolieProductPage (last accessed Dec. 19, 2025).

[6] Product Test Reports, Jolie, https://cdn.shopify.com/s/files/1/0560/3062/5949/files/Jolie_Testing_Reports.pdf?v=1752590791 (last accessed Dec. 19, 2025).

[7] *Id.*

does not provide any substantiation for beyond this report). Either way, Defendant provides no further information about whether participants were paid, how they were selected, how the study was conducted or controlled, the criteria for the study, nor whether the study was reviewed and by whom. Reasonable consumers are misled to believe the "clinically-proven" label validates the "hair growth" and substantial shedding reduction claims, including the "increase hair growth" claim (Figure 2), when the report's limited self-reported data does not support follicular growth or true loss prevention per scientific consensus. Defendant's report is not a clinical study at all and does not demonstrate, and cannot demonstrate, that the Product reduces biological hair shedding or promotes hair growth. Accordingly, Defendant's representation that the Product is "clinically proven" is false because no clinical evidence establishing Defendant's purported outcomes exists.

22. Reasonable consumers who do not have sophisticated scientific backgrounds, are misled to impute credibility to Defendant's claims by the simple mention of "clinically proven." As such, Defendant's claims are even further misleading because reasonable consumers would also not know that water contaminants can cause shaft breakage and thinning that may mimic hair loss, but that removing these contaminants through filtration does not halt hair loss.

23. On its Amazon Product page, Defendant makes similar representations for how the Product is "the only clinically proven showerhead to fight hair shedding" and that "[f]iltering your shower water with Jolie is clinically-proven to reduce hair shedding []."[8] Defendant further represents that the Product is able to "transform

[8] The Jolie Filtered Showerhead, Amazon, https://www.amazon.com/FILTERED-SHOWERHEAD-Pressure-Showerhead-Accessory/dp/B0BM3DXSR3/ref=sr_1_1?dib=eyJ2IjoiMSJ9.yUiEgMcDDQvxxHwdZpcUZn2j6hvvVGl5g2vlQieTtRs.VXcuGM_LUCQ2fONzwpebHwkTDesn00L2cN763QVEtEg&dib_tag=se&keywords=jolie%2Bshower%2Bhead&m=A2FXENLB85WBDY&nsdOptOutParam=true&qid=1766011409&s=merchant-items&sr=1-1&th=1 (last accessed Dec. 19, 2025).

[consumers'] hair with Jolie" by reducing their hair shedding.[9]

24. Defendant makes the same Hair Restoration Representations for the Product through its various marketing channels, *i.e.*, on its Product page on Ulta.com, its website and on Amazon. As such, reasonable consumers were uniformly exposed to and deceived by Defendant's deceptive advertising and marketing.

**C. The Product is Incapable of Delivering the Warranted Benefits**

25. Unfortunately for Plaintiff and similarly situated consumers, the Product is incapable of delivering on Defendant's hair growth promises. Contrary to Defendant's claims that "HAIR GROWTH STARTS WITH CLEAN WATER" (Figure 1) and representations that imply increased growth (Figure 2), use of the Product does not lead to new follicular hair growth or halt true hair loss.

26. The scientific evidence, including published double-blind placebo-controlled clinical studies, is unequivocal: the removal of chlorine from water does not result in increased hair growth or prevent hair loss. Thus, contrary to Defendant's representations, the Product does not deliver hair growth or prevent hair loss.

27. While chlorine and hard water can indeed damage hair, causing breakage and thinning that may mimic hair loss, removing these contaminants through filtration does not lead to new hair growth or halt hair loss. Rather, it merely allows hair to return to its state prior to exposure to chlorine and/or hard water.

28. Importantly, Defendant's representations are false not merely because results vary among users, but because no shower-water filtration system is biologically capable of stimulating follicular hair growth, altering the hair growth cycle, increasing hair growth rates, or preventing true hair loss conditions such as androgenetic alopecia or telogen effluvium. The scientific consensus establishes that

---

[9] *Id.*

while water quality may affect the cosmetic condition of existing hair shafts, it does not affect follicular activity, hair density, or biological hair regeneration. Accordingly, Defendant's claims promising hair growth, reduced hair loss, or "more hair on your head" represent outcomes that the Product is fundamentally incapable of delivering.

29. In sum, Defendant's use of "clinically proven" when paired with "hair growth" headlines (Figures 1 and 2) and "more hair" implications (Figure 3) is misleading because it overstates limited shaft protection as validated growth promotion, contrary to scientific evidence (citations above).

### D. Defendant's Misrepresentations Injured Plaintiff and Class Members

30. Although Defendant is in the best position to know the true nature of its Product during the relevant time frame, Plaintiff satisfies, to the extent possible, the requirements of Rule 9(b) alleging the following facts with particularity:

31. **WHO:** Defendant Jolie Skin Company, Inc.

32. **WHAT:** Defendant's conduct here was, and continues to be, fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Product is able to deliver hair growth and halt hair loss through its filtering properties. Defendant omitted from Plaintiff and Class Members that the Product cannot deliver the Hair Restoration Representations. Defendant knew or should have known, as the manufacturer and marketer of the Product with superior knowledge of the qualities and capabilities of its Product, that this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant misrepresented on the marketing and advertising of the Product that it was able to deliver Hair Restoration Representations. Defendant knew or should have known that the Product cannot and does not provide the advertised Hair Restoration Representations because Defendant is the manufacturer of the Product and has

quality control testing protocols set in place that should have alerted of the Product's inability to provide said benefits.

33. **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the applicable statutory periods, including at the point of sale. Defendant's false and misleading Hair Restoration Representations were made through Defendant's marketing and distribution channels for consumers to view and rely on.

34. **WHERE:** Defendant's misrepresentations were made on the Product's marketing and advertising and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction. The Product is sold online nationwide.

35. **HOW:** Defendant misrepresented on the Product's marketing and advertising that the Product is able to promote new hair growth, including the restoration of missing hair, and the ability to reduce hair loss. As discussed in detail throughout the Complaint, Plaintiff and Class Members read and relied on Defendant's misrepresentations regarding the Hair Restoration Representations before purchasing the Product and in choosing to purchase the Product.

36. **WHY:** Defendant misrepresented that the Product is able to deliver new hair growth, including the return of missing hair, and able to reduce hair loss. These representations were material in that they induced consumers like Plaintiff to purchase the Product for its purported Hair Restoration Representations while charging consumers a price premium. Accordingly, due to the Hair Restoration Representations, Plaintiff and Class Members paid a price premium for the Product that they would not have, or would have paid substantially less for, had the Product not been deficient in its hair restoration capabilities, contrary to Defendant's express representations. As such, Defendant unlawfully profited by selling the Product to thousands of consumers throughout the nation, including Plaintiff and the Class Members.

37. **INJURY:** Plaintiff and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Product, or would not have purchased it on the same terms, had they known that Defendant's Product could not and would not deliver the Hair Restoration Representations.

**CLASS ALLEGATIONS**

38. Plaintiff seeks to represent a Nationwide class defined as:

> All persons in the United States who, within the applicable statute of limitations period, purchased the Jolie Showerhead for personal or household use (the "**Nationwide Class**").

39. Plaintiff also seeks to represent a California Sub-class defined as:

> All persons in California, who within the applicable statute of limitations period, purchased the Jolie Showerhead for personal or household use (the "**California Subclass**").

40. Collectively, the Class and California Subclass shall be referred to as the "Classes." The "Product" shall be in reference to the Product purchased by Plaintiff.

41. Specifically excluded from the Classes are: Defendant; Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures; entities controlled by Defendant; Defendant's heirs, successors, assigns, or other person or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors; the Judge assigned to this action; any member of the Judge's family and staff; Defendant's counsel; and Plaintiff's counsel.

42. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Nationwide Class and California Subclass (collectively, the "Classes") may be modified, expanded or narrowed by amendment to the Complaint or narrowed at class certification.

43. **Numerosity.** The Members of the Classes are geographically dispersed

throughout the United States and are so numerous that individual joinder of each member is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members of the Classes. Although the precise number of Class Members is unknown to Plaintiff at this time, it may be determined through discovery.

44. **Commonality.** Common questions of law and fact exist to all Members of the Classes and predominate over any questions affecting only individual Nationwide Class or California Subclass Members. The common legal and factual questions include, but are not limited to:

a. Whether Defendant made false and/or misleading statements to the public concerning the efficacy of the Product;

b. Whether Defendant's Product delivers the results Defendant warrants;

c. Whether Defendant omitted material information to the consuming public concerning the actual hair shedding reduction and hair growth capabilities of the Product;

d. Whether Defendant's representations and partial representations were material to consumers;

e. Whether Defendant's misrepresentations concerning the capabilities of the Product were likely to deceive a reasonable consumer;

f. Whether Defendant advertised the Product with the intent not to sell it as advertised;

g. Whether Defendant made and breached express warranties to Plaintiff and the Classes concerning the Product's capabilities;

h. Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and the Classes; and

i. Whether Plaintiff and the Classes are entitled to damages.

45. **Typicality.** Plaintiff's claims are typical of the claims of the Members of the Classes in that the Class Members were deceived, or reasonably likely to be deceived, in the same way by Defendant's false and misleading Hair Restoration

Representations for the Product. All Class Members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

46. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

47. **Predominance.** Pursuant to Federal Rule of Civil Procedure 23(b), the common issues of law and fact identified above predominate over any other questions affecting only individual Members of the Classes. Issues affecting the Nationwide Class and California Subclass fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

48. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would thus be virtually impossible for the members of the Classes to obtain effective redress on an individual basis for the wrongs committed against them. Even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by this action. A class action provides the benefits of adjudication of those issues on a single proceeding, economies of scale, and comprehensive

supervision by a single court, and presents no unusual management difficulties under the circumstances.

49. Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Consumer Legal Remedies Act (CLRA)
### Cal. Civ. Code §§ 1750, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

50. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in the preceding paragraphs of this complaint.

51. Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

52. Plaintiff and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d). By purchasing Defendant's Product, Plaintiff and the Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code § 1761(e) and 1770.

53. Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Product is a "good" within the meaning of Cal. Civ. Code § 1761(a).

54. Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Product.

55. As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff and the California Subclass Members suffered injury and damages in an amount to be determined at trial.

56. Defendant violated California's Consumer Legal Remedies Act (CLRA) by engaging in the following unfair and deceptive business practices as alleged above and herein:

a. Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Product has characteristics it does not have;

b. Defendant violated Cal. Civ. Code § 1770(a)(7) by representing that the Product is of a particular standard and quality despite being of another; and

c. Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Product with the intent not to sell it as advertised.

57. The CLRA was enacted to protect consumers against such practices. The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

58. Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

59. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

60. On or around October 3, 2025, prior to the filing of this complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers. Defendant has not taken corrective action.

61. Plaintiff and California Subclass Members seek actual and punitive damages, restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violation of California's Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

62. Plaintiff hereby incorporates by reference and re-alleges herein the

allegations contained in all preceding paragraphs of this Complaint.

63. Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

64. Defendant violated California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 – 17210, by engaging in unfair, fraudulent, and unlawful business practices.

65. Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased her Product for her own personal use. In doing so, Plaintiff relied upon Defendant's false representations that the Product could provide the benefits of the Hair Restoration Representations. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

***"Unfair" Prong of the UCL***

66. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm alleged.

67. Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant engaged, and continues to engage in, false, misleading, and deceptive advertising campaigns that mislead consumers into believing that the Product they purchased will provide the benefits described by the Hair Restoration Representations despite not being able to do so.

68. Defendant's conduct, as alleged above and herein, was not motivated by any legitimate business or economic need or rationale, other than to maximize its revenue and the expense of consumers who sought hair growth and reduced hair loss benefits. No legitimate reasons, justifications, or motives outweigh the harm and

adverse impact of Defendant's conduct on members of the general consuming public. Defendant engaged, and continues to engage, in such conduct solely to wrongfully extract monies from reasonable consumers seeking the benefits described by the Hair Restoration Representations, including Plaintiff, to which Defendant is not entitled. Defendant could have, but has not, used alternative means of effecting its legitimate business needs, such as by properly disclosing the accurate capabilities of the Product, as well as by omitting the Hair Restoration Representations entirely or discounting the Product to appropriately account for the Product's functionality.

69. Defendant's conduct harms consumers and hurts market competition. Defendant's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Members of the California Subclass because it violates consumers' reasonable expectations. If Defendant had advertised its Product in a non-misleading fashion, Plaintiff and other California Subclass Members could have considered other options for purchasing hair growth and restoration products.

***"Fraudulent" Prong of the UCL***

70. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

71. Defendant has engaged in, and continues to engage, in, fraudulent business practices by knowingly representing to consumers that the Product they purchase will provide them with hair growth benefits when it does not. Defendant's conduct deceived Plaintiff and California Subclass Members who purchased the Product in reliance on Defendant's Hair Restoration Representations and is highly likely to deceive members of the consuming public because, as alleged above, the Product violates consumers' reasonable expectations regarding hair growth and restoration. Such a business practice lacks utility and functions only to maximize Defendant's profits at the expense of its customers. The gravity of the harm to Plaintiff and other California Subclass Members, who lost money or property by

paying for the Product, far outweighs the benefit to Defendant's conduct.

72. Further, Defendant's fraudulent business practices will continue to mislead consumers because it will be impossible for consumers to know whether Defendant has stopped misrepresenting the functionality of the Product as it concerns its purported hair growth and hair loss benefits. Accordingly, the risk of harm to Plaintiff, members of the California Subclass, and the consuming public, is ongoing.

***"Unlawful" Prong of the UCL***

73. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

74. Defendant's business practices as alleged herein constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"). Specifically, Defendant has unlawfully marketed and advertised its Product in violation of Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9), as detailed above.

75. Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.* (the "FAL"), as described below, and provisions of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

76. Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above and below, were the direct and proximate cause of financial injury to Plaintiff and other members of the California Subclass. Defendant has unjustly benefited as a result of its wrongful conduct. Accordingly, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and the California Subclass; (b) disgorge all revenues obtained as a result of its violations of the UCL; (c); and pay attorneys' fees and costs for Plaintiff and the California Subclass.

**<u>COUNT III</u>**
**Violation of California's False Advertising Law (FAL)**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Subclass)**

77. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

78. Plaintiff brings this claim individually and on behalf of the California Subclass Members against Defendant.

79. Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code §§ 17500, *et. seq.,* by publicly disseminating false, misleading, and/or unsubstantiated advertisements regarding its Product, as alleged above and herein.

80. Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and has lost money or property because of Defendant's false advertising. Specifically, Plaintiff purchased her Product for her own personal use. In so doing, Plaintiff relied on Defendant's false and misleading representations regarding the Product's capability to promote hair growth and prevent hair shedding. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's claims.

81. Defendant disseminated false and misleading advertisements to increase the sales of the Product.

82. Defendant knew or should have known that the advertisements for its Product were false and/or misleading.

83. Defendant knew or should have known that consumers, including Plaintiff and other members of the California Subclass, would believe that the Product was capable of providing the promised hair growth benefits.

84. Plaintiff and the California Subclass Members have suffered harm as a result of Defendant's violations of the FAL because they paid monies for the Products that they would not have purchased but for Defendant's false and

misleading advertisements.

85. Accordingly, Plaintiff and members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution of Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the FAL; and (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

## COUNT IV
## Breach of Express Warranty
## (On Behalf of Plaintiff, the Nationwide Class and California Subclass)

86. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

87. Plaintiff brings this action individually and on behalf of Members of the Nationwide Class and California Subclass against Defendant.

88. Plaintiff brings this claim under the laws of the State of California.

89. As the designer, manufacturer, marketer, distributor, and/or seller of the Product, Defendant issued an express warranty by representing to consumers that the Product would provide the benefits of the Hair Restoration Representations when the Product is unable to produce such results.

90. Defendant's representations were part of the basis of the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of the Classes.

91. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Subclass were injured because they: (1) paid money for the Product that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Product they purchased was different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Product they purchased had less value than Defendant represented. Had Defendant not breached the express warranty by making the false

representations alleged herein, Plaintiff and the Nationwide Class and California Subclass Members would not have purchased the Product or would not have paid as much as they did for it.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff, the Nationwide Class and California Subclass)**

92. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of the complaint.

93. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

94. Plaintiff brings this claim under the laws of the State of California.

95. To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted by Fed. R. Civ. P. 8.

96. Plaintiff and the Nationwide Class and California Subclass Members conferred benefits on Defendant by purchasing the Product.

97. Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the Members of the Classes who purchased the Product. Retention of these monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the Product was not capable of producing the benefits of the Hair Restoration Representations, rendering the Product unfit for its intended, marketed purpose. Those misrepresentations and omissions caused injuries to Plaintiff and members of the Classes because they would not have purchased the Product had they known the true capabilities of the Product.

98. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the members of the Classes is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

**PRAYER FOR RELIEF**

99. WHEREFORE, Plaintiff, individually and behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order Certifying the Nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Nationwide Class and California Subclass;

(b) Appointing Plaintiff's counsel to represent the Nationwide Class and California Subclass;

(c) Declaring that Defendant's conduct violated the statutes and common law referenced herein;

(d) Finding in favor of Plaintiff, the Nationwide Class, and California Subclass against Defendant on all counts asserted herein;

(e) Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

(f) Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing its unlawful practices as set forth herein, directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

(g) Awarding Plaintiff, the Nationwide Class, and California Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

(h) Ordering Defendant to pay pre-judgment interest on all amounts awarded;

(i) Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Dated: March 18, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Rd., Ste 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
Email: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Christy Clifft, who resides in Encino, California. I have personal knowledge of the facts set forth in this declaration and if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California, as Plaintiff Clifft purchased the Product in this District. Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Product at issue to Class Members in this District.

3. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this March 18, 2026.

*/s/ L. Timothy Fisher*
L. Timothy Fisher